Michael A. Long, Esq. (SBN: 266555)
Law Office of Michael A. Long
1920 Hillhurst Avenue, #1139
Los Angeles, CA 90027
T: (310) 625-3395  F: (213) 915-3133
E: mlong@aexius.com
*Attorney for Defendant, PINKBLUSH.COM*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT AND ADDISON, LLC, a California limited liability company,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PINKBLUSH.COM, an unknown entity,<br>                    Defendants. | Civil Case No.  **8:20-cv-1160-SB-DFMx**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT UNDER FRCP 12(B)(6)**<br><br>**Hearing Date: March 12, 2021**<br>**Time: 10:30 AM**<br><br>Action filed: June 3, 2020 |

NOTICE IS GIVEN that Defendant PINKBLUSH.COM hereby moves to dismiss the Complaint under FRCP Rule 12(b)(6) for failure to state a claim for which relief can be granted. This motion is based on the accompanying memorandum of points and authorities and such evidence or argument that may be presented at hearing on this motion.

Respectfully submitted,

DATED:  January 29, 2021          LAW OFFICE OF MICHAEL A. LONG
*/s/ Michael A. Long* _____
Michael A. Long, Esq.
*Attorneys for Defendant, PINKBLUSH.COM*

1
2

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................5

II.     LEGAL STANDARD – CLAIMS FOR TRADEMARK INFRINGEMENT,
         FALSE DESIGNATION OR ORIGIN, AND UNFAIR COMPETITION ARE
         ANALYZED TOGETHER ........................................................................7

III.    LEGAL STANDARD – LIKELIHOOD OF CONFUSION............................8

IV.     PLAINTIFF FAILS TO ALLEGE STANDING TO ENFORCE THE MARK..9

V.      THERE IS NO PRESUMPTION THAT PLAINTIFF OWNS ANY RIGHTS
         IN THE ALLEGED MARKS BECAUSE THE REGISTRATIONS
         ALLEGED ARE NOT ALLEGED NOR SHOWN TO BE IN ITS NAME....10

VI.     THE SECOND CLAIM MUST BE DISMISSED BECAUSE THERE IS NO
         FALSE DESIGNATION OF ORIGIN BECAUSE THERE ARE NO FALSE
         DESIGNATIONS OF ANY GOODS AND THE WEBSITE
         "PINKBLUSH.COM" IS NOT A FALSE DESIGNATION...........................10

VII.    THE THIRD CLAIM FOR UNFAIR COMPETITION IS REPETITIVE WITH
         ITS OTHER CLAIMS AND MUST ALSO BE DISMISSED FOR FAILURE
         TO STATE A CLAIM ............................................................................11

VIII.   ONE SINGLE INSTANCE OF SOCIAL MEDIA MISTAKE AS ALLEGED
         CONFUSION FAILS TO SHOW A LIKELIHOOD OF CONFUSION *AS TO
         THE GOODS OR ANY DAMAGES*..................................................12

IX.     CONCLUSION......................................................................................13

1

## TABLE OF AUTHORITIES

2

Cases

3 *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d
4     1446, 1457 (9th Cir.1991)...............................................................6

5 *AMF Inc. v. Sleekcraft Boats* (9th Cir.1979) 599 F.2d 341 ...............................7

6 *AMF Inc. v. Sleekcraft Boats* (9th Cir.1979) 599 F.2d 341, 348 ...........................4

7 *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979).........................6

8 *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ......................7

9 *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th
10     Cir.1999)....................................................................................6

11 *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994)..............................6

12 *Davis v. Walt Disney Co.*, 430 F.3d 901, 905 (8th Cir. 2005) ............................11

13 *Duluth News–Tribune v. a Mesabi Publishing Co.*, 84 F.3d 1093, 1098-99 (8th Cir. 1996)
14     ............................................................................................11

15 *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-03 (9th Cir. 2007) .....................7

16 *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031 (C.D.Cal.2011)
17     ............................................................................................6

18 *Kythera Biopharmaceuticals, Inc.* ......................................................10

19 *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897-98 (C.D.
20     Cal. 2014)..................................................................................6

21 *Lujan v. Defenders of Wildlife*,504 U.S. 555, 560 (1992) ..................................8

22 *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1249 (9th Cir.
23     1999)........................................................................................9

24 *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006)..............8

25 *Sleekcraft*, 599 F.2d at 348 ..............................................................7

26 *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010)........................5

-3-

*United States v. Hays*, 515 U.S. 737, 743 (1995) ........................................................8

*ZW USA, Inc. v. PWD Sys., LLC*, 208 F. Supp. 3d 1025, 1050-51 (E.D. Mo. 2016) .......11

Statutes

15 U.S.C. § 1114(1) ........................................................................................................6

15 U.S.C. § 1125 ............................................................................................................6

15 U.S.C. § 1125(a) ......................................................................................................10

15 U.S.C. §§ 1114(1) & 1125 ........................................................................................6

15 USC §1125(a) ............................................................................................................9

FRCP Rule 12(b)(6) ......................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case stands or falls on Plaintiff SCOTT AND ADDISON, LLC's ("S&A") trademark infringement claim. The claims for unfair competition are preempted by the Lanham Act.[1]  S&A claims to use the mark "Pinkblush" in connection with **women's maternity clothing**. Complt. ¶ 8; Exhibit A thereto (Trademark Registration Nos. 4,349,787 and 4,608,916). Yet the goods claimed as infringing appear to involve children's home décor and gifts—such as picture frames—which are unrelated. No reasonable consumer would be confused because a purchaser of women's clothing would not go to Pinkblush.com to purchase maternity clothing as there are not maternity clothes offered for sale.[2] Pinkblush.com sells **no clothing whatsoever**.

The Complaint is frivolous, unsupported, and should be dismissed. Unrelated goods is insufficient to show a likelihood of confusion as to the goods for which the mark is registered. *AMF Inc. v. Sleekcraft Boats* (9th Cir.1979) 599 F.2d 341, 348.

Remarkably, there is no allegation in the Complaint that Defendant Pinkblush.com sold a single item of women's clothing or maternity clothing -- or any clothing at all. The allegations are unsupported and without merit.  The basis of alleged confusion falls far below the required showing of a likelihood of confusion.

---

[1] To offer context, this case stems from repeated offers from Plaintiff to purchase the web domain "Pinkblush.com" (registered June 2, 2004).  Plaintiff's attempts to purchase the domain span many years – with first contact in 2013. Plaintiff has become hostile and appears to have hired an influencer to help fabricate a false claim of confusion. The allegations are paper thin and cannot sustain its claim.

[2] The Pinkblush.com website is alleged to be shown in Exhibit C to the Complaint – which contains images of home décor, not maternity wear or clothing.

1    Citing to a social influencer post (Exh. D to Complaint), Plaintiff confuses the

2    presence of the website Pinkblush.com with actual confusion.[3]

3    The opposite is true. Since the Internet age, consumers no longer blindly follow a

4    link like lemmings just because an influencer says so. There is no allegation that any

5    reasonable consumers were actually confused, and because internet users are extremely

6    savvy,[4] such confusion is highly unlikely. *Toyota Motor Sales v. Tabari*, 610 F.3d 1171,

7    1179 (9th Cir. 2010) Confusion cannot fairly be presumed, and this negates any

8    likelihood of confusion.

9    ///

10    ///

11    ///

12

13

14

---

15    [3] The social post asserted by Plaintiff is also internally inconsistent, with

16    "Pinkblushmaternity.com" listed at the bottom, which appears to be the website of
     Plaintiff, not of Defendant.

17    [4] "When a domain name making nominative use of a mark does not actively

18    suggest sponsorship or endorsement, the worst that can happen is that some consumers
     may arrive at the site uncertain as to what they will find. But in the age of FIOS, cable

19    modems, DSL and T1 lines, reasonable, prudent and experienced internet consumers are
     accustomed to such exploration by trial and error. [Citation] ***They skip from site to site,***

20    ***ready to hit the back button whenever they're not satisfied with a site's contents.*** They
     fully expect to find some sites that aren't what they imagine based on a glance at the

21    domain name or search engine summary. Outside the special case of trademark.com, or

22    domains that actively claim affiliation with the trademark holder, consumers don't form
     any firm expectations about the sponsorship of a website until they've seen the landing

23    page — if then. This is sensible agnosticism, not consumer confusion. See Jennifer E.

24    Rothman, INITIAL INTEREST CONFUSION: STANDING AT THE CROSSROADS OF TRADEMARK
     LAW, 27 Cardozo L. Rev. 105, 122-24, 140, 158 (2005). ***So long as the site as a whole***

25    ***does not suggest sponsorship or endorsement by the trademark holder, such***

26    ***momentary uncertainty does not preclude a finding of nominative fair use.***" *Toyota
     Motor Sales.* (emphasis added)

-6-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.   LEGAL STANDARD – CLAIMS FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OR ORIGIN, AND UNFAIR COMPETITION ARE ANALYZED TOGETHER

The Court in *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897-98 (C.D. Cal. 2014) wrote:

> In its Complaint, Plaintiff has alleged causes of action for: (1) trademark infringement, (2) unfair competition, and (3) false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 & 1125, and under California law. Compl. ¶¶ 25–36, 40–44.
>
> This Court analyzes these claims together for the purposes of this Motion. "[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031 (C.D.Cal.2011) (citing *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir.1979)); see also *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1173 (C.D.Cal.1986) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same"). A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir.1999) (citing 15 U.S.C. §§ 1114(1) & 1125; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979)). Furthermore, the Ninth Circuit "has consistently held that state common law claims of unfair competition ... are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) (citing *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991)).

///
///
///

-7-

### III.    LEGAL STANDARD – LIKELIHOOD OF CONFUSION

The likelihood of confusion test is set forth in *AMF Inc. v. Sleekcraft Boats* (9th Cir.1979) 599 F.2d 341. "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. When the goods are related, but not competitive, several other factors are added to the calculus. If the goods are unrelated, there can be no infringement because confusion is unlikely." *Sleekcraft*, 599 F.2d at 348. Under this test, courts consider eight factors: [1] the strength of the mark; [2] the relatedness of the goods; [3] the similarity of the mark; [4] the evidence of actual confusion; [5] the marketing channels used; [6] the type of goods and the likely degree of care by the purchaser; [7] the defendant's intent in selecting the mark; and [8] the likelihood of expansion of the product lines. (*Id.* at 348-349.)

"We have identified eight nonexclusive factors relevant to evaluating likelihood of confusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). In its order, the district court did not mention, let alone analyze, these critical factors in evaluating TFN's likelihood of success on its trademark infringement claim. Rather, the district court simply concluded that: (1) TFN appears to have a legitimate mark; (2) Oey at one time acknowledged TFN's mark and sought to protect it; and (3) "after his separation from the organization, [Oey] began to publicly encourage the disparagement of the Freecycle trademark." Contrary to the district court's conclusion, these facts — even if true — simply do not demonstrate that TFN has a likelihood of success on its § 1125(a) infringement claim." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-03 (9th Cir. 2007)

///

///

///

**IV.    PLAINTIFF FAILS TO ALLEGE STANDING TO ENFORCE THE MARK**

The allegations are insufficient to support a finding that Plaintiff has standing.  "A claim of trademark infringement under § 1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate: (1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) Standing is "an essential . . . part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*,504 U.S. 555, 560 (1992). Plaintiff bears the burden of proving the existence of standing to sue. See, e.g., *United States v. Hays*, 515 U.S. 737, 743 (1995).

Here, Plaintiff claims it owns the registrations without any allegations as to how it came to own such alleged registrations. The registrations are in the names of unknown third parties "Brad and Zoe, Inc." (Exh. A to Complt.)

Plaintiff has alleged without evidence that it somehow owns the asserted marks. The assignment of the mark is without proper basis. There is no explanation in the Complaint as to how "Brad and Zoe, Inc." somehow gave up rights in the cited registrations such that Plaintiff somehow acquired those rights. The Complaint fails to properly allege standing to enforce the registrations. Lacking sufficient allegations for standing, Plaintiff fails to state a claim for which relief can be granted.[5] Therefore, its claims must be DISMISSED.

---

[5] Even if Plaintiff were to show it somehow obtained an assignment of ownership, such assignment is not pled in the Complaint and is insufficient as a matter of law. Moreover, an alleged assignment can also fail in other respects as there have been no allegations of any sale of the goods and equipment concerning the prior business, and the transaction can be invalidated for other reasons such as corporate looting, strawman transaction, or that the purchaser and seller were captive corporate shells and therefore alter egos of each other. This is true because the addresses of the buyer and seller will be

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## V.   THERE IS NO PRESUMPTION THAT PLAINTIFF OWNS ANY RIGHTS IN THE ALLEGED MARKS BECAUSE THE REGISTRATIONS ALLEGED ARE NOT ALLEGED NOR SHOWN TO BE IN ITS NAME

Under 15 U.S.C. § 1115(a), a valid federal trademark registration constitutes prima facie evidence that the holder owns the mark. See, *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1249 (9th Cir. 1999) That presumption does not apply here, as again the registrations are not in Plaintiff's name, but the name of a third party, "Brad and Zoe, Inc." Therefore, the motion should be GRANTED and the Complaint DISMISSED.

## VI.   THE SECOND CLAIM MUST BE DISMISSED BECAUSE THERE IS NO FALSE DESIGNATION OF ORIGIN BECAUSE THERE ARE NO FALSE DESIGNATIONS OF ANY GOODS AND THE WEBSITE "PINKBLUSH.COM" IS NOT A FALSE DESIGNATION

A claim for "false designation of origin" has three elements: (1) a false designation of origin; (2) the false designation of origin has a substantial effect on interstate commerce; and (3) the false designation of origin creates a likelihood of confusion among the consuming public. This claim is under the Lanham Act, 15 USC §1125(a).

In the present case, none of the requisite facts are alleged in the Complaint. There is nothing false about any of the goods marked as alleged in Pinkblush.com. (**Exh. C** to Complaint) Instead, Plaintiff alleges an intent to steal, which is not an element of "false designation of origin" under 15 USC §1125(a). The Complaint states:

> 26. On information and belief, defendant willfully and intentionally adopted and used marks confusingly similar to plaintiff's PINKBLUSH trademark and designation to steal plaintiff's goodwill.
> 27. Additionally, defendant has caused or is likely to have caused confusion and reverse confusion amongst consumers as to the quality and source of plaintiff's products.

---

revealed to be at the same address which makes these entities highly suspect and failing to conduct a proper transaction to validly assign trademark rights.

28. By reason of the foregoing and upon information and belief, defendant PinkBlush.com has violated Section 43 of the Lanham Act (15 U.S.C. § 1125(a)) by using, in connection with its goods and advertisements, false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of plaintiff with defendant and as to the origin, sponsorship, or approval of defendant's goods, services and commercial activities.

Complaint, ¶¶ 26-28.   Here, element (1) is missing.   Nothing in the allegations concerns a false designation – in fact, it is clear that Pinkblush.com is not owned by the Plaintiff so the use of the web domain is not false, but a function of the website domain name. Therefore, element (1) is not met. Element (2) "a substantial effect on interstate commerce" is also clearly missing. Element (3) "creates a likelihood of confusion among the consuming public" is stated in a conclusory manner and does not have supporting facts to support the allegation. The allegation is a legal conclusion, not a factual one, and therefore is inoperative for purposes of alleging <u>facts</u> to support its claim. Therefore, the second claim for "false designation of origin" must be DISMISSED for failure to state a claim under FRCP 12(b)(6).

## VII.   THE THIRD CLAIM FOR UNFAIR COMPETITION IS REPETITIVE WITH ITS OTHER CLAIMS AND MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM

Unfair Competition under 15 U.S.C. § 1125(a) follows the same analysis. *Kythera Biopharmaceuticals, Inc.* Here, the Complaint fails for the same reasons as stated for the first two claims. Therefore, the motion should be GRANTED, and the third claim should be DISMISSED.

///

///

///

1
2

**VIII.   ONE SINGLE INSTANCE OF SOCIAL MEDIA MISTAKE AS ALLEGED CONFUSION FAILS TO SHOW A LIKELIHOOD OF CONFUSION *AS TO THE GOODS OR ANY DAMAGES***

3
4

A single instance alleged has to be of actual confusion as to the goods, not a website.

5
6
7
8

S&A's trademark registrations list the following goods: "maternity clothing, namely, shirts, parts and dresses, in Class 25"; and "clothing, namely, shirts, blouses, tops, jackets, dresses, skirts, pants, jeans, scarves, and shoes, in Class 25." Id. There is no allegation that any confusion exists as to any of the registered goods.

9
10
11
12
13
14
15
16
17

In analyzing whether there is a likelihood of confusion, "weight is given to the number and extent of instances of actual confusion." *ZW USA, Inc. v. PWD Sys., LLC*, 208 F. Supp. 3d 1025, 1050-51 (E.D. Mo. 2016) Evidence of only a few instances of actual confusion is not conclusive of the existence of a likelihood that consumers would "be confused as to the source" of the product, the "core element" of trademark infringement. *Davis v. Walt Disney Co.*, 430 F.3d 901, 905 (8th Cir. 2005) (quotation marks and citations omitted); see *Duluth News–Tribune v. a Mesabi Publishing Co.*, 84 F.3d 1093, 1098-99 (8th Cir. 1996) (holding that "even several isolated incidents of actual confusion" are insufficient to support a finding of likelihood of confusion).

18
19
20
21

There is an absence of any damages alleged. The allegation of a third-party link stating "Pinkblush.com" is a clerical or Scrivener's error as the page specifically states that PinkBlush Maternity is the correct website. Thus, even if there were to be any confusion, there is no damage to the Plaintiff.

22
23
24
25
26

Plaintiff claims it advertises using social media. And Plaintiff uses social media advertising to claim that it causes confusion. This is manufactured and it does not constitute likely confusion – it is a weak and shortsighted ploy to attempt to manufacture a claim for infringement in order to pressure defendant into giving up its web domain.

-12-

The social influencer is not alleged as a purchaser of goods from Pinkblush.com. No evidence is shown that the social media influencer was confused as to source. Not a single returned good or confused shopper is alleged in any of the various allegations in the Complaint. Nothing in the Complaint alleges likely confusion as to any consumers in the market based on any <u>facts</u>. Exhibit D to the Complaint, a social media post, is not evidence of the kind of trademark confusion in the market because it is not evidence of any purchasers ever being confused. Therefore, contrary to the allegation of actual confusion, Plaintiff's own Exhibit C is not evidence of actual confusion but of a manufactured attempt to distort reality. Glaringly missing is any allegation that consumers are suffering any confusion. Lacking any facts sufficient to allege confusion, the motion should be GRANTED and the Complaint should be DISMISSED.

## IX.    CONCLUSION

Based on the foregoing, the complaint fails to state a claim for any trademark infringement, false designation of origin, or unfair competition. Therefore, the motion should be GRANTED and the complaint should be DISMISSED. FRCP Rule 12(b)(6).


DATED:  January 29, 2021

Respectfully submitted,
LAW OFFICE OF MICHAEL A. LONG

*/s/ Michael A. Long*
Michael A. Long, Esq.
*Attorneys for Defendant,*
*PINKBLUSH.COM*

-13-

## PROOF OF SERVICE
Certificate of Service

I am employed in the County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action; my business address is 1920 Hillhurst Ave #1139, Los Angeles, CA 90027.

On **January 29, 2021**, I served the foregoing document described **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT UNDER FRCP 12(B)(6)** on the interested parties as follows:

Joseph A. Mandour, III (SBN 188896)
Ben T. Lilia (SBN 246808)
MANDOUR & ASSOCIATES, APC
8605 Santa Monica Blvd., Suite 1500
Los Angeles, CA 90069
Tel.: (858) 487-9300
E-mail: jmandour@mandourlaw.com, blila@mandourlaw.com
*Attorneys for Plaintiff, Scott and Addison, LLC*

[]        (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]       (PERSONAL SERVICE) I caused the above referenced document to be personally served by hand on the addressees listed above.

[X]      (VIA ELECTRONIC MAIL) I caused such document to be delivered to addressees listed above.

Executed on **January 29, 2021**, in Los Angeles, California.

*/s/ Luke Ehrlichman*
Luke Ehrlichman

-14-

MOTION TO DISMISS
CASE NO. **8:20-cv-1160-SB-DFMx**